EMIL ISBILL et al., respondents,

*v.*

JAMES DUFFY et ux., appellants.

[Decided May 16th, 1932.]

Mr. *John D. Craven*, for the appellants.

Mr. *Frederick W. Mattocks* and Mr. *William J. Morrison, Jr.*, for the respondents.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.

The bill in this case was filed to compel the specific performance of a contract for the sale of lands, entered into between the defendants below, James Duffy and his wife, Mary, as intending vendors, and Emil Isbill and George Taufer, as intending vendees. The date of the contract was October 17th, 1929. The lands which were the subject-matter of the contract were located in Ridgefield Park, Bergen county, and the purchase price was fixed by the contract at $1,736.90. No deposit was required to be made by the vendees at the time of the execution of the contract, but the whole amount of the purchase-money was to be paid at the time fixed for the delivery of the deed, namely, January 15th, 1930. One of the provisions of the instrument was that time should be of the essence thereof. Almost immediately after its execution, Isbill and Taufer entered into possession of the lot and started to erect a building thereon, or, rather, to proceed with its erection, the foundation thereof already having been installed by a third person before the making of the contract. When the time for performance

fixed by the contract arrived, the complainants apparently were not in a financial position to pay the purchase price. At any rate, the time for its performance was extended by mutual consent several times up to the 25th of February, 1930, when the attorney of the defendants wrote to Taufer, informing him that the vendors would not wait longer than March 17th, then next, for the performance of the contract; and that unless the work of erecting the building was finished by that time, his clients would declare the contract at an end. During all of the period between the making of the contract and the writing of this letter the complainants were engaged in the erection of the building, and continued with the work of erection after receiving the letter and up to and beyond the 17th of March, 1930. The total amount expended by the complainants in the construction of this building was satisfactorily shown to be in excess of $4,000. On the 28th of May, 1930, the complainants informed the defendants that they were ready to perform their part of the contract, and tendered the purchase price due under its terms. They were then notified by the defendants that their right to a conveyance had been determined by their failure to comply with the requirement contained in the letter of February 25th, 1930, and that the defendants would not convey the title to them, as they had lost all interest in the lands which were the subject of the contract. Thereupon the present bill was filed, and Vice-Chancellor Fallon, before whom the case was tried, reached the conclusion, from the proofs submitted, that the complainants were entitled to a conveyance upon the payment to the defendants of the agreed upon purchase price, with interest thereon, and of all taxes and other legal charges against the property for moneys which had accrued subsequent to the making of the contract; or, in the alternative, that, if the defendants should fail to tender a deed free of all encumbrances except as above indicated, then a decree would be entered in favor of the complainants and against the defendants establishing a lien in favor of the former upon the premises for all moneys expended in the construction of the dwelling house, the amount of such expenditure to be

determined in accordance with the practice of the court. From the decree entered in accordance with this conclusion the defendants have appealed.

It seems to us that the conclusion reached by the vice-chancellor was eminently just. In the first place, the provision in the original agreement making time of the essence of the performance of the contract was waived by the parties. There was never any subsequent agreement between them to make time the essence of the contract, except perhaps that contained in the letter of February 25th, to which reference has been made. Assuming that this letter made time the essence of the extended contract and that the contract ceased to exist when not performed within the time specified in the letter, nevertheless that fact ought not to entitle these defendants, who stood by and saw the complainants spend, as has been stated, over $4,000 in the erection of the building, to retain title to the property, with the building on it, without paying a dollar therefor. Although the facts in the present case are not at all similar to those which existed in the case of *McKelway* v. *Armour, 10 N. J. Eq. 115,* the legal situation is analogous in its nature. In that case McKelway and Armour owned adjacent lots in the city of Trenton, conveyed to them respectively by the same grantor. McKelway built a house on the lot which he supposed had been conveyed to him, and did not discover until the house was entirely completed that he had caused its erection on the Armour lot. Armour was equally ignorant of this fact. McKelway, being unable to make any satisfactory arrangement with Armour for an equitable adjustment of their respective rights, brought suit in chancery seeking to have the deed to Armour so reformed as to exclude the lot on which the complainant had erected his building and to substitute in the place thereof the lot conveyed to the latter, they being of the same dimensions. Chancellor Williamson, who heard the case, concluded that it would be grossly inequitable to permit Armour to continue to hold the title to the land, including the building which McKelway had erected thereon, without paying for the same, and directed that the value of the build-

ing be ascertained, and also the value of the lot, and left it to the option of Armour to say whether he would prefer to retain the lot and pay the cost of the building or whether he would prefer to convey the lot to McKelway upon receiving the market value thereof. This case was cited with approval by this court in *Anglescy* v. *Colgan, 44 N. J. Eq. 203,* and the principle laid down in it adopted. In the later case of *Magnolia Construction Co.* v. *McQuillan, 94 N. J. Eq. 736,* the doctrine of the *McKelway Case* was again referred to with approval and followed by this court.

Considering that the underlying principle which controlled the decisions in the cases referred to is equally applicable to that now before us, we conclude that the decree under review should be affirmed, with costs to the respondents.

*For affirmance*—The Chief-Justice, Trenchard, Parker, Campbell, Lloyd, Case, Bodine, Donges, Van Buskirk, Kays, Hetfield, Dear, Kerney, JJ. 13.

*For reversal*—None.