SARA BERNSTEIN, APPELLANT, v. LOUIS KOHN AND CLARA KOHN, RESPONDENTS.

Submitted March 21, 1921—Decided June 20, 1921.

Where there are concurrent covenants to be performed by vendor and vendee, the universal legal rule is that before the latter is enabled to rescind and sue for a breach of the contract he must show tendered performance of such concurrent covenants on his part and that he had demanded performance by the vendor of concurrent covenants on his part, but an equally well recognized exception to this general rule is that in case a vendor is unable to perform at the time agreed upon for the passing of the title, tender of performance by the vendee is not required in order to enable him to rescind and to sue his vendor for a breach of the contract.

---

On appeal from the Essex County Circuit Court.

For the appellant, *Aaron Marder.*

For the respondents, *Nathan Erlich.*

The opinion of the court was delivered by

KALISCH, J.   The plaintiff sued the defendants to recover the sum of $2,000 paid by her to them as deposits on the purchase of real estate of the defendants, with interest, and the expenses incurred by her in having the title of the premises searched and a survey made thereof, because of the defendants' default arising out of their inability to convey a good title.

By articles of agreement made and entered into by and between the parties to this controversy, on December 26th, 1919, the defendants, party of the first part, for the sum of $20,-500, agreed to convey to the plaintiff, party of the second part, by warranty deed, free from all encumbrances, excepting certain lease-hold interests mentioned in the agreement, a certain tract of land in the city of Newark, fifty feet front and rear and ninety-five feet deep, with a three-story stucco building thereon, and for which the plaintiff agreed to pay the purchase price in the manner following:   One thousand dollars upon signing the agreement; $3,500 by conveying to the defendant, party of the first part, by warranty deed free from all encumbrances, a vacant plot of land, described by metes and bounds in the agreement; $18,000 in cash upon date of passing title.

The agreement contained the further provision that in the event the party of the second part (the plaintiff) was not ready to close title on the day fixed in the agreement, which date was March 1st, 1920, the closing of the title could be postponed to April 1st, 1920, upon the payment by her of an additional sum of $1,000 to the defendants for which the plaintiff was to receive credit upon the final payment of the $18,000 above mentioned.

At the plaintiff's request the closing of the title was postponed to April 1st, 1920, she paying an additional $1,000 on account of the purchase price to the defendants   In the meanwhile the plaintiff's lawyer caused a search of the defendants' title to the property to be made and also a survey of the premises.   The survey revealed that the stucco building itself encroached upon adjoining property as much as five inches and that the fire-escape of the building extended three feet

over the defendants' line. Upon the discovery of the en-
croachments, the plaintiff's attorney informed the defendants'
attorney, by telephone, what the survey disclosed as to the
encroachments, and received in reply, in substance, that the
encroachments would be attended to. On April 7th, 1920, the
plaintiff's attorney wrote to defendants a letter, the material
part of which .reads: "Inclosed please find survey which
shows encroachments. These encroachments, of course, will
have to be taken care of before title is passed." On April
20th, 1920, the plaintiff's attorney wrote to defendants' attor-
ney as follows: "I wish to inform you that my client insists
on taking title to the above premises, which include a three-
story brick and stucco building without any encroachments
and with the labor law violations remedied." Apparently,
no attention was paid to this letter and nothing was done by
defendants to change the situation as it originally was, for it
appears that on May 6th, 1920, the plaintiff's attorney wrote
to the defendants' attorney the following: "I have been
trying to get you on the telephone for the past few days.
Please answer my letter to you of April 20th, 1920, in the
above matter." The testimony further tended to establish
that subsequent to May 6th, 1920, the defendants' attorney on
various occasions when the subject of the encroachments was
discussed, said to the plaintiff, "Wait a few days; we will get
the encroachments cleaned up;" that finally on July 9th,
1920, the plaintiff's attorney called at the office of defendants'
attorney and said to him, in the presence of the defendant
Louis Kohn, that the plaintiff "could not wait any longer;
that since both of these encroachments had not been cleaned
up, and the labor law violations not being cleaned up, we
couldn't take title, and I demanded the deposit money back
on behalf of my clients," to which the defendants' attorney,
in substance, replied: "Wait a few days. We will see if we
can't get these encroachments cleaned up. We are not re-
sponsible as to the labor law violations," and as to them the
plaintiff's attorney testified that he did not press that very
much. It appears that nothing further was done. The
plaintiff made no tender of the money and of the deed of the

vacant lot which constituted the purchase price to be paid for defendants' property. On July 15th, 1920, an action was commenced by the plaintiff in the Essex County Circuit Court against the defendants, as above stated, and, having established the facts as above narrated, at the close of her case the trial judge, on motion of defendants' counsel, gave a judgment of nonsuit, the propriety of which judicial action is brought here by the plaintiff's appeal for review.

The trial judge appears to have entertained the notion that under the facts as developed by the testimony it became obligatory upon the plaintiff before she was entitled to rescind and commence an action against her vendor for a breach of the contract, not merely to show encroachments upon the property, but to go beyond that and show that she has tendered performance and that it had been refused.

This was obviously an erroneous conception of the legal rule applicable to the facts of the case.

The universally recognized legal rule is, where there are concurrent covenants to be performed by vendor and vendee, that before the latter is enabled to rescind and sue for a breach of the contract, he must show tendered performance of such concurrent covenants on his part and that he has demanded performance by the vendor of concurrent covenants on his part.

There is an equally well-recognized exception to this general rule, and that is, in case a vendor is unable to perform at the time agreed upon for the passing of the title, tender of performance by the vendee is not required, in order to enable him to rescind and to sue his vendor for a breach of the contract. *Reutler* v. *Ramsin,* 91 *N. J. L.* 262 (at *pp.* 264, 265) ; *Caporale* v. *Rubine,* 92 *Id.* 463 ; 39 *Cyc.* 1422.

In the present case it appeared that the defendant vendor was not at any time in a position to convey a good title, and it would therefore have been an idle ceremony for the vendee to go through with a tender of performance on his part. The law does not lend its sanction to such mummery. The plaintiff's case comes clearly within the exception to the general legal rule above stated.

The case of *Caporale* v. *Rubine, supra,* relied upon by the respondent as supporting the legal propriety of the action of the trial judge in granting the nonsuit, does not do so in fact. In that case the plaintiff, who was the vendor, had at no time a clear title to the property which he agreed to convey to the vendee in exchange of property of the latter. Before the time fixed for the performance of the agreement the vendee had parted with his property to another.

This court held, in reversing a judgment by the vendor against his vendee in an action for a breach of the contract, that the fact that the vendee was unable to perform his agreement at the time fixed for performance went only to the extent to relieve the vendor from tendering performance but did not relieve him from establishing in order to recover damages for a breach of the contract that he was able and ready to perform his part of the undertaking, namely, by conveying the property to the vendee "absolutely free and clear of all encumbrances" except such as stated in the agreement.

In the present case there was proof that the plaintiff vendee was able and ready to perform, and that the defendant vendor never was, at any time.

The judgment is reversed and a *venire de novo* awarded.

*For affirmance*—PARKER, J.  1.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, JJ.  13.