[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 335 
By assignment, the plaintiff stands as the purchaser in a contract for the sale of real estate. When the vendors, the defendants, failed to convey the land to her, she sued in the County Court for the return of $1,750 paid on account of the purchase price. The defendants moved for a summary judgment on the ground that the plaintiff had not tendered performance on her part; that she had breached the contract, and that "there is no issue of fact requiring a trial upon the merits." The motion was granted and the plaintiff appeals.
The contract was dated in May, 1948, and called for delivery of the deed and payment of the purchase money on September 1, 1948. The contract was assigned to the plaintiff by an instrument dated September 2nd, that is, the day after the date of performance mentioned in the contract. Although the contract expressly gave the vendee, Mrs. Janoff, the right to assign, Dunsky joined in the assignment in order to consent "to an extension of the date of closing to the fifteenth day of October, 1948." As consideration for the extension, he exacted a further deposit of $1,000 on account of the purchase price, and a payment of $100 in addition to the purchase *Page 336 
price "to cover losses incurred by failure of vendee to close title on September 1, 1948, as agreed." Shortly before October 15th, the title searcher discovered that the title was subject to the lien of a judgment against the vendor Joseph Dunsky and one Elmer Frey, entered in the Essex County Circuit Court in 1931 for $926. Some time later the parties learned that the judgment creditor was dead, and that no administrator of his estate had been appointed.
Mrs. Hodes' affidavit shows that until she was informed of the judgment, she expected to take title on October 15th; and that she never agreed to extend the time of closing; that she needed the property for a dwelling, promptly on the date fixed for closing, and that Mr. Dunsky knew that this was the reason she took the assignment. Dunsky says that she spoke to him several times subsequent to October 15th, to find fault with the delay in closing of title. "Both of us berated our attorneys for the length of time it was taking for the matter to close, but neither of us did anything about it by setting a definite date for closing, with time of the essence or by way of rescission." On December 2, 1948, plaintiff's attorney wrote to defendants or their lawyer, demanding a return of the deposit. The defendants refused and plaintiff started her action March 29, 1949. It so happened that on the very day that plaintiffs wrote for their money back, the defendants made ex parte application to Judge Daniel J. Brennan, under P.L. 1948, c. 325, for an order directing the Clerk of the Superior Court to accept payment of the judgment and enter a satisfaction thereof on the record. Judge Brennan made the order, but the defendants did not pay the amount due on the judgment to the clerk and consequently the judgment remained open of record and a lien until after June 6, 1949, when summary judgment in the present cause was entered. Counsel informed us at the argument that after the judgment was entered, the defendants conveyed the premises to a third party.
The first ground of defendants' motion for judgment was that the plaintiff could not recover because she had not tendered payment of the purchase price. This was not *Page 337 
a valid contention. In case a vendor is unable to perform at the time agreed upon for the passing of the title, tender of performance by the vendee is not required in order to enable him to rescind and recover the down payments. Bernstein v. Kohn,96 N.J.L. 223 (E. A. 1921); Safris v. Somers, 108 N.J.L. 370
(E. A. 1932). The contract called for delivery of a title free from encumbrance, and certainly the title was encumbered by the judgment. Until December 2nd, when Judge Brennan made the order above mentioned, the title could not be cleared because there was no one to whom the debt could be paid. In this situation, Kadow v. Cronin, 97 N.J.L. 301 (E. A. 1921), has no application.
The court below held that plaintiff waived performance on October 15th and therefore could not suddenly put an end to the contract. The court found, as evidence of the waiver, that even after October 15th plaintiff and her attorney were constantly urging the owners to clear the title; that for weeks she did all she could to have the contract carried out. Let us express it, that after waiting for a month and a half, her need for a residence was so great that she could wait no longer, or even that her patience finally wore out. That seems to have been just the situation in Bernstein v. Kohn, supra, and yet our highest court held that the purchaser could recover.
Lastly, the court, borrowing from equity, found that time was not of the essence of the contract. The instant case is an action at law brought in a court whose civil jurisdiction, in addition to probate matters, is the same as that formerly exercised by the Common Pleas. Const., Art. VI, § 4. At law, time for performance, stipulated in a contract, is said to be of the essence unless a contrary intent appears from the face of the contract. Shinn v. Roberts, 20 N.J.L. 435 (Sup. Ct. 1845);Pietsch v. Stirling Home Builders, 97 N.J.L. 451; affirmed,98 Id. 569 (1923); Will., Contr., § 847. And this dictum
has been repeated within the year. Earlin v. Mors, 1 N.J. 336. There is, however, a strong tendency to depart from a strict enforcement of the rule. Thus it is said in Rest., Contr., § 276(d), "In contracts for the sale or purchase *Page 338 
of land, delay of one party must be greater in order to discharge the duty of the other than in mercantile contracts." Under this view, how great a delay is permissible depends upon all the circumstances; it is a question for the trier of the facts.
But even if we apply the equity rule, it is by no means obvious that time was not of the essence of the sale to plaintiff. The fact that defendants charged a substantial sum for the extension from September 1st to October 15th is a rather strong indication that the parties intended the stipulation as to time to be more than a formality. The need of plaintiff for a place of residence indicates the importance of the time element when considered in connection with the housing shortage last fall.
On the motion for summary judgment, conflicting versions of the facts were presented, and widely varying inferences might be drawn. A summary judgment should be granted only if it is obvious that there is no genuine issue and that, as a matter of law, the moving party should have judgment. Rule 3:56-3. Such a judgment should be granted only with much caution. Mitchell v.Wrightstown Community Apartments, 4 N.J. Super. 321 (App.Div. 1949).
The judgment is reversed.